The **UNITED STATES**

v.

**Antoine N. VERRET.**

**Crim. A. No. 31553.**

United States District Court
E. D. Louisiana,
New Orleans Division.

July 31, 1969.

Robert O. Homes, Asst. U. S. Atty., New Orleans, La., for the United States.

John Ciolino, New Orleans, La., for defendant.

HEEBE, District Judge:

The defendant, charged with possessing forty-five freshly killed coots out of season in violation of the Migratory Bird Treaty Act, 16 U.S.C. §§ 703 et seq., filed a motion to suppress which raises the apparently novel question of whether the limitations imposed by 16 U.S.C. § 706 upon searches conducted by federal game agents is applicable to searches conducted by state game agents. The facts giving rise to this question appear to be quite common.

While on routine night patrol on December 13, 1968, in the Bayou DuLarge area of Terrebonne Parish, game agent Peter Legnon thought he saw a light gleaming in the marsh. Without knowing what the light was, he and his partner continued driving down the road. After driving about five miles farther, they decided to return to where they had seen the light. Upon doing so, they heard two shotgun blasts from the direction of the light which was still visible. It had rained earlier that night and an examination of the only road leading into the field where the light was seen —which was a soft, shell road—revealed but one set of tire tracks. Shortly after examining the tire tracks, the agents observed a car coming out of the field, and when it approached them, they stopped it. Upon doing so, they observed two shotguns and a headlight, commonly referred to as a bull's eye, in the back seat. Although they did not have a search warrant and did not place the occupants of the car under arrest, they proceeded to search the car, and in doing so found the forty-five coots in the trunk of the car.

The agent who conducted the search, Mr. Legnon, is a state wildlife and fisheries agent. He does have a commission from the United States Department of Interior as a federal game agent and serves as a deputy .federal game agent without pay. If he is thereby rendered an "employee" of the Interior Department, there can be no doubt but that 16 U.S.C. § 706, which provides in pertinent part:

> "Any *employee* of the Department of the Interior authorized by the Secretary of the Interior to enforce the provisions of sections 703–711 of this title * * * shall have authority, *with a search warrant,* to search any place * * * ." (emphasis added)

is applicable and that the evidence obtained without a search warrant in violation of the statute must be suppressed. However, traditionally an "employee" is compensated for his services, and his employer usually exercises a certain degree of control over his actions. The defendant has failed to carry his burden of proving that the agent in this case was an "employee" of the Department of Interior, and we doubt seriously that it could ever be shown that state agents with federal commissions are "employees" of the Department of Interior. We hold, therefore, on the evidence before us, that the agent who conducted this search is not an "employee" of the Department of Interior. Consequently, 16 U.S.C. § 706 is not, by its literal terms, applicable to the search in question.

The defendant contends, however, that under the rationale of Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669, 1960, we must nevertheless exclude the evidence. In *Elkins,* *state* officers seized evidence in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures. The evidence was then turned over to federal authorities for use in a federal criminal prosecution. The Supreme

Court held that evidence seized by state agents in violation of an accused's *constitutional* rights could not be used against him in a federal criminal prosecution. *Elkins* was limited to evidence seized in violation of the *Constitution*. It is clear that a person's *constitutional rights* must be protected regardless of who conducts the search. We are not here concerned with the defendant's constitutional rights. We are concerned solely with a federal statute which applies solely to federal game agents. The statute grants certain powers to federal game agents and, at the same time, imposes certain limitations upon them. One of these powers is the power to search and seize contraband, but it is limited in that federal agents must have a search warrant. We are asked to extend *Elkins* beyond the Constitution and hold that the limitations on federal game agents contained in the federal statute applies as well to state game agents. We do not think this is a reasonable nor a proper extension of *Elkins*. Otherwise, every state agent would be held, not only to the requirements of state law, but to the requirements of federal statutory law as well. We have been cited no cases, and our research has uncovered none, in which *Elkins* has been so extended. We feel that as long as a state agent is acting within the scope of his authority, under state law, and, of course, the Constitution, the search and seizure cannot be vitiated even though it uncovers evidence of a federal crime.

 The agent in this case was acting within the bounds of his authority under state law as well as within the bounds of the Constitution. Louisiana Revised Statutes 56:108 [1] authorizes state game agents to search upon probable cause without a warrant an automobile believed to have been involved in a violation of a state game law. Hunting after dark [2] is forbidden by statute in Louisiana. L.R.S. 56:124(8). [3] In view of the facts as related above, the agents certainly had probable cause to believe that a state game law had been violated, and they were acting within their authority under state law in searching the automobile without a search warrant. Moreover, since probable cause for the search did exist, it was not violative of the Constitution. Because of the ease with which an automobile may be moved and its contents removed, it has long been settled that a vehicle which is moving or which is capable of being moved, may be searched without a warrant if there is probable cause to believe that it contains contraband even in the absence of a lawful arrest. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931); Carroll v. United States, 267 U. S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); United States v. Prince, 301 F.2d 358 (6th Cir. 1962); and Bradford v. United States, 194 F.2d 168 (6th Cir. 1952).

For the foregoing reasons, It is the order of the court that the motion to suppress be, and the same is hereby, denied.

1. L.R.S. 56:108 provides in pertinent part: " * * * the commissioner or any agent may visit or examine, with or without search warrant, any cold storage plant, warehouse, boat, store, car, conveyance, automobile or other vehicle, airplane or other air craft, basket or other receptacle, or any place or deposit for wild birds or game quadrupeds, whenever they have probable cause to believe that any provision of this Sub-part has been violated * * *."

2. Except raccoon hunting which is allowed by groups of hunters with .22 caliber rifles.

3. L.R.S. 56:124(8) provides: "No person shall: * * * (8) take or hunt deer or fur-bearing animals with headlights or bull's eyes, or take alligators under five feet in length. Provided, that it shall be lawful for parties of two or more hunters, and with one or more dogs to hunt raccoons at night with lights and to carry on such hunts, for the purpose of taking raccoons, not more than one standard .22 caliber, rim fire rifle, and to use single ball rim fire ammunition only."